UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PETER KELLY, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | *Docket No. 06-168-P-S* |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security [1] | ) | |
| | ) | |
|     *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question whether the commissioner properly found that the plaintiff, who alleges that he has been disabled from working since February 1, 2001 by depression and anxiety, was not disabled as of March 31, 2001, his date last insured. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff remained insured for SSD purposes only through

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted currently serving Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on July 3, 2007, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

March 31, 2001, Finding 1, Record at 16; that his allegations regarding mental limitations were not supported by the medical evidence and were not credible to the extent of establishing an inability to work on or before March 31, 2001, Finding 5, *id.* at 17; that, despite his symptoms of depression and anxiety, the plaintiff retained the mental residual functional capacity ("RFC") to perform his previous seasonal jobs as a sea-urchin diver and a carpenter through March 31, 2001, Finding 6, *id.*; and that he therefore was not under a disability at any time through his date last insured, Finding 7, *id.* The Appeals Council declined to review the decision, *id.* at 4-7; Exh. C to Plaintiff's Motion To Supplement the Record ("Motion To Supplement") (Docket No. 17), making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).[3]

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[3] By letter dated September 25, 2006, the Appeals Council denied a request for review that had been filed directly by the plaintiff on or about August 10, 2006. *See* Record at 4-8. The plaintiff's counsel filed a separate request for review by letter dated September 15, 2006, enclosing progress notes of treating psychiatrist Noel C. Goodman, M.D., spanning the period from February 4, 2000 through October 24, 2000 ("Supplemental Goodman Notes"), which the Appeals Council evidently did not see before issuing its September 25, 2006 decision. *See id.*; *see also* Exhs. A-B to Motion To Supplement. In response to the filing of the instant statement of errors, which mentioned omission from the Record of the September 15, 2006 cover letter and the progress notes that had been enclosed therewith, *see* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 10) at 2, counsel for the commissioner requested that the Appeals Council look in the file for the progress notes at issue and review them to determine whether they warranted remand. *See* Affidavit of Susan Beller Donahue, Special Assistant United States Attorney, attached to Defendant's Opposition to Plaintiff's Motion To Supplement the Record ("Opposition") (Docket No. 18), ¶¶ 3-4. The Appeals Council reviewed the Supplemental Goodman Notes and notified the plaintiff's counsel, by letter dated June 1, 2007, that it had concluded that "no change in the prior action [denying review] is warranted." Exh. C to Motion To Supplement. Over the objection of the commissioner, I granted the plaintiff's motion to supplement the Record to add the September 15, 2006 cover letter, the Supplemental Goodman Notes that had been enclosed therewith and the Appeals Council's June 1, 2007 letter, which are attached as
*(continued on next page)*

The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the burden is on the plaintiff to show that he cannot perform his past relevant work. *Goodermote*, 690 F.2d at 7; 20 C.F.R. § 404.1520(e). In considering the issue, the commissioner must make a finding of the plaintiff's RFC, a finding of the physical and mental demands of past work and a finding as to whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff contends that the administrative law judge erred in (i) denying his claim in the absence of medical records without following the requirement of Social Security Ruling 83-20 ("SSR 83-20") that he infer an onset date of disability, (ii) failing to develop the record by neglecting to subpoena Dr. Goodman's treatment notes despite the plaintiff's counsel's request that he do so, and (iii) discounting Dr. Goodman's opinion without following the criteria of 20 C.F.R. § 404.1527(d)(2). *See* Statement of Errors at 2-3. I agree that, on the basis of the first point, reversal and remand is warranted. I need not and do not discuss the plaintiff's remaining points of error.

## I. Discussion

SSR 83-20 provides, in relevant part:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.

SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49.

SSR 83-20 applies only when a claimant has been determined to be disabled. *See, e.g., Beasich v. Commissioner of Soc. Sec.*, 66 Fed. Appx. 419, 432 (3d Cir. 2003) ("Here there was no

---

Exhibits A-C to the Motion To Supplement. *See* Order (Docket No. 20).

dispute that, in the context of a separate application for SSI [Supplemental Security Income] benefits, Beasich was determined to have been 'disabled' as of August 1, 1996, by his psychiatric condition that was the result of his head injury in 1981. In view of that earlier SSI disability finding, the task of the ALJ in the context here was to determine onset – *i.e.,* when Beasich's impairments first became disabling. An earlier onset date assessment is mandated when a claimant already has been found disabled and alleges an earlier disability onset date.") (footnote omitted); *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997) ("Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required.").

An official SSI disability finding typically supplies the predicate for triggering of the duty to infer disability onset date pursuant to SSR 83-20. *See, e.g., Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997) ("SSR 83-20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled *as of* an application date, and the question arises whether the disability arose at an earlier time. In the particular case of dual Title II-XVI claims, the onset date for the Title II claim may be earlier than the date for the Title XVI claim. This is because one can collect SSI under Title XVI only as of the date of application, regardless of how long one may have suffered from a particular infirmity, but one can collect DIB [Disability Insurance Benefits] under Title II that covers up to 12 months of disability prior to the filing of a DIB application, provided that one had insured DIB status during that period of disability.") (citation omitted) (emphasis in original).[4] The

---

[4] Whereas entitlement to SSD benefits hinges in part on acquisition of insured status, entitlement to SSI benefits does not. *See, e.g., Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("In 1972, Congress added a new social security program to provide 'supplemental security income' (called 'SSI') for 'aged, blind and disabled' persons of limited means regardless of their insured status. This is a social welfare program funded out of general taxpayer revenues. SSI is available even to those who qualify for SSD, but SSD income is considered in determining whether a disabled person qualifies for SSI under the latter's means test.") (citations omitted); *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff
*(continued on next page)*

plaintiff never was officially determined to be disabled in the sense that he was found eligible for SSI benefits. *See* Record at 12 n.1; Findings 1-7, *id*. at 16-17. At oral argument, counsel for the commissioner contended that this fact was fatal to the plaintiff's reliance on SSR 83-20. Nonetheless, I am persuaded that in the unusual circumstances of this case, SSR 83-20 should have been applied.

At the plaintiff's hearing, the administrative law judge admonished his counsel for having failed to ensure that he submitted an application for SSI benefits, commenting: "[W]e have quite a remote date last insured [for SSD purposes], so there's going to be some question about whether the commencement of the disability was during that time frame. In light of the worsening of his symptoms and recent medical care and so forth it would seem to be that it would probably would be pretty clear that he has been disabled more recently for sure. We'll resolve whether that, how far back that goes, but I just assumed that he probably was getting SSI. . . . [T]he disability seems fairly clear, you know, recently and so on. So, I'm, I'm at a loss as to why there's not an [SSI] application." *Id*. at 435-36. The plaintiff did file an SSI application as suggested; however, it was rejected based on excess income (not failure to demonstrate disability), and not further pursued. *See id*. at 12 n.1.

In the body of his decision, the administrative law judge observed: "Although the claimant almost certainly has been unable to work since March 2004, he has failed to demonstrate that he has been 'disabled' since a time on or before March 31, 2001[.]" *Id*. at 16. A finding of disability since at least March 2004 was, in turn, amply supported by the evidence of record, which included voluminous treatment notes documenting (i) a course of electroconvulsive therapy ("ECT") in March 2004 overseen by Glenn Prentice, M.D., *see, e.g., id*. at 137-41, 162-63, (ii) an inpatient psychiatric hospitalization later that month after the plaintiff was brought to Maine Medical Center in an agitated

---

had to have been disabled on or before her date last insured (March 31, 1995); however, eligibility for SSI benefits is not dependent on insured status.").

and disorganized state, *see, e.g., id.* at 196-99, (iii) a second inpatient psychiatric hospitalization in December 2004 during which the plaintiff presented on admission as disheveled, extremely irritable and defensive, disorganized, paranoid and pressured, *see, e.g., id.* at 186-90, and (iv) a second course of ECT in fall 2005 overseen by Dr. Prentice, *see, e.g., id.* at 403-19.

The question whether circumstances such as these trigger application of SSR 83-20 appears to be one of first impression. The parties do not cite, nor can I find, caselaw on point. In a previous instance in which a claimant relied on a comment in the body of a decision to support application of that rule, this court declined to apply SSR 83-20, stating that the administrative law judge's "remarks [could not] reasonably be construed as constituting a determination that the plaintiff became disabled subsequent to his date last insured." *Garland v. Barnhart*, 94 Soc. Sec. Rep. Serv. 305, 308 (D. Me. 2004) (rec. dec., *aff'd* Mar. 25, 2004). However, in *Garland*, the administrative law judge merely had remarked, in the body of his decision, that although the treating source's "opinion may be supported with respect to the claimant's current condition," and "current evidence supports marked functional limitations in activities of daily living," there was no indication that the claimant was restricted in that manner prior to his date last insured. *Id.* (citation and internal quotation marks omitted). In this case, by contrast, (i) the administrative law judge, at hearing, described the plaintiff's current disability as "fairly clear," directing the plaintiff's counsel to submit an SSI application on his behalf, (ii) the application for SSI was turned down not on the basis of lack of demonstration of current disability but rather on the basis of excess income, (iii) the administrative law judge described the plaintiff, in the body of his decision, as "almost certainly" currently disabled, and (iv) the Record evidence supported such a finding. All of this added up to more than a stray, off-the-cuff remark in the body of a decision; in the peculiar circumstances of this case, this was as close as it was possible for the plaintiff to get to an official finding of current disability. It thus in my view is tantamount to a

finding of current disability for purposes of application of SSR 83-20.[5]

The administrative law judge accordingly erred in neglecting to apply that ruling in this case. At oral argument, counsel for the commissioner posited that any such error was harmless inasmuch as the plaintiff adduced insufficient evidence that he suffered prior to his date last insured from mental impairments of a disabling level of severity, and thus there was no need to call a medical expert to infer a disability date. In other words, she argued, the administrative law judge possessed sufficient evidence to make a determination supported by substantial evidence that the plaintiff was not disabled prior to his date last insured. I am unpersuaded.

A failure to cite SSR 83-20 is harmless error only to the extent the dictates of the rule nonetheless are heeded; it is otherwise reversible error. *See, e.g., Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("The ALJ did not refer to SSR 83-20 specifically in his decision, but this omission by itself is not reversible error. We must determine whether the ALJ nevertheless properly applied the requisite analysis. Our review of the decision leads us to conclude that he did not."); *Field v. Shalal* [sic], No. CIV. 93-289-B, 1994 WL 485781, at *3 (D.N.H. Aug. 30, 1994) ("The ALJ's failure to explicitly rely on SSR 83-20 does not by itself require remand. In this case, however, the ALJ's reasoning also fails to comport with SSR 83-20's substantive requirements.") (citation omitted).

SSR 83-20 provides, in relevant part:

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law

---

[5] While SSR 83-20 applies only when an individual has been determined to be disabled, the rule does not specify that it is to be applied only upon a determination of eligibility for SSI (Title XVI) benefits. *See* SSR 83-20 at 49.

> judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.
>
> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition. . . .
>
> The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

SSR 83-20 at 51-52.

As the administrative law judge suggested at the plaintiff's hearing, the Record contained significant gaps and ambiguities regarding the plaintiff's condition prior to expiration of his insured status on March 31, 2001. *See, e.g.*, Record at 447-50. At the hearing, held February 15, 2006, *see id*. at 432, the plaintiff testified that he began seeing Dr. Goodman sometime in early 2000, about a year before he stopped working, and that he had seen him on a weekly or greater basis since that time, *see id*. at 442-43, 444-45. He stated, *inter alia*, that at the beginning of the slide into anxiety and depression that prompted his first visit to Dr. Goodman "it was horrific. I couldn't, I wasn't coherent enough to have a conversation like you are having right now." *Id*. at 450-51. He added that his condition actually had improved since beginning treatment with Dr. Goodman, stating: "I asked Dr. Goodman the last time I saw him how he thought I was coming along and what improvement I'd shown, and he said, if I can remember, he said that I was a lot more coherent now than I was when I first went to see him." *Id*. at 451.

8

As of the time of the hearing the Record contained several letters from Dr. Goodman dated from 2004 through 2006 addressing his treatment of the plaintiff's psychiatric conditions, including a mental RFC assessment dated November 4, 2005, *see, e.g., id*. at 118, 420-24, but no actual underlying notes or records of that treatment. Indeed, there was no contemporaneous medical evidence of any kind emanating from the period prior to the plaintiff's date last insured of March 31, 2001. The earliest medical evidence of record dated from June 19, 2003 and did not bear on the plaintiff's anxiety or depression, *see id*. at 119; the earliest medical evidence of record reflecting treatment for a mental-health condition – consisting of notes of Dr. Prentice reflecting a consultative examination of the plaintiff, upon referral by Dr. Goodman, for consideration of ECT – dated from March 8, 2004, *see id*. at 137-40.

To make matters worse, Dr. Goodman's letters contained material discrepancies. In a May 19, 2004 letter to Whom It May Concern, for example, Dr. Goodman stated that the plaintiff had "been a patient under my continuous psychiatric treatment for the past 3 years[,]" *id*. at 118; in a September 15, 2005 letter to Dr. Prentice, Dr. Goodman wrote that the plaintiff had been under his care "for approximately ~~five~~ three years for treatment of a condition that initially presented as a Major Depression with significant psychotic (paranoid) features[,]" *id*. at 423, and in a February 10, 2006 letter to the plaintiff's counsel, Dr. Goodman stated: "I have reviewed my records, and I first saw [the plaintiff] on 2/4/2000. He has been under my professional care continuously since that time[,]" *id*. at 424. In addition, in his February 10, 2006 letter to the plaintiff's counsel, Dr. Goodman stated: "In my opinion, the severity of [the plaintiff's] mental illness was just as severe, or perhaps even worse, in the year 2000 than it is now. The functional limitations described in my mental RFC dated 11/4/05 were certainly present in the year 2000[.]" *Id*. at 424. Yet, in his September 15, 2005 letter to Dr. Prentice, Dr. Goodman had written, *inter alia*:

> [The plaintiff's] treatment with medications and psychotherapy for that condition [major depression with significant psychotic (paranoid) features] was, early on, rewarding, but over the past couple of years, his mood has become more depressed[,] and he has developed unremitting anxiety, despite treatment with virtually all classes and specific agents of the psychopharmacologic armamentarium. . . . He had a short course of ECT as an outpatient at MMC a year or so ago, but became quite confused at home. He continues at present to be quite depressed, despondent[,] extremely anxious and reports inability to concentrate, though his speech at visits is coherent and goal-directed. He thinks incessantly about suicide, has contracted to keep working toward recovery and refuses to re-enter Spring Harbor Hospital[,] where he felt that he received no benefit.

*Id*. at 423. In addition, in a note appended to his November 4, 2005 mental RFC assessment, Dr. Goodman had stated, *inter alia*:

> At the time of his referral [to Dr. Goodman] he [the plaintiff] was extremely depressed and was voicing delusions . . . . Treatment with antidepressant medications, antipsychotic medications and weekly psychotherapy brought his thinking and mood back to a more satisfactory level, but this was relatively short-lived improvement. During the period of mental improv[e]ment, his work involvement dimin[i]shed, but he did develop an interest in oil painting[,] and this appeared to be healthy for him, but about a year ago, he started to go down-hill clinically, with loss of interest in painting and with progressive difficulty in concentration and performance in his regular work a[s] a carpenter.[] His personal appearan[c]e and hyg[ie]ne progressively deteriorated[,] and he was making changes in medication and dosages on his own, with deleterious results. . . . About a year ago his depression worsened markedly[,] and he was beset with daily suicidal ideation. He developed panic-type anxiety and was at times homebound by it. He made frequent emergency telephone calls to me. Over the course of his treatment he was treated with every class of psychotropic medications, with multiple agents from most classes, but in the last year, none seemed t[o] be helpful to [] him. Within the past two months, he has gotten some benefit from electro convulsive treatments, [h]owever that improvement appears to be transient[,] [A]ND HE IS REPORTING OVERWHELMING FEARS AND CLEARLY IS NOT ABLE TO WORK.

*Id*. at 421-22.

To his credit, the administrative law judge sought to address this confused state of affairs by directing the plaintiff's counsel to obtain as many of Dr. Goodman's contemporaneous medical

records as possible. *See id*. at 447-49.[6] He held the Record open for two weeks to permit submission of additional evidence, directed that the plaintiff's counsel provide him a progress report by that time and noted that he would consider an additional reasonable extension of time. *See id*. at 454-55.

By letter dated March 1, 2006, the plaintiff's counsel reported to the administrative law judge that he had requested Dr. Goodman's notes, particularly for the period from February 4, 2000 through March 31, 2001, by letter, fax and telephone and that Dr. Goodman had informed him he had located and would forward his initial evaluation of the plaintiff and would continue to search for his treatment notes. *See id*. at 56-57. The plaintiff's counsel sought another two-week extension to obtain Dr. Goodman's records. *See id*. He concluded: "This office will continue to press Dr. Goodman for his notes to fully develop the record on this issue. 20 C.F.R. §§ 404.1512(d) and (e). I expect we will be successful. However, if we are unsuccessful, I would urge you to subpoena them, pursuant to 20 C.F.R. §§ 404.916(b)(1) and 404.950(d)(1)." *Id*.[7]

From all that appears, the plaintiff's counsel submitted only one contemporaneous progress note of Dr. Goodman (documenting Dr. Goodman's initial treatment of the plaintiff on February 4, 2000) prior to issuance of the instant adverse decision on July 20, 2006. *See id.* at 14, 425-31. In his decision, the administrative law judge did not mention the plaintiff's counsel's request for issuance of a subpoena of Dr. Goodman's records, *see id*. at 12-17, and there is no indication of record that such a subpoena was issued. The plaintiff's counsel eventually was able to obtain the Supplemental

---

[6] When pressed by the administrative law judge as to why he had not submitted Dr. Goodman's contemporaneous progress notes, the plaintiff's counsel explained: "My understanding talking to Dr. Goodman on the phone is that he's an elderly gentleman, and I, I just don't think that he's maintaining an office quite the way that a younger man[] maintain[s] a psychiatric office." Record at 448.

[7] The first cited regulation, 20 C.F.R. § 404.916(b)(1), provides: "You may request that we assist you in obtaining pertinent evidence for your disability hearing and, if necessary, that we issue a subpoena to compel the production of certain evidence or testimony. We will follow subpoena procedures similar to those described in § 404.950(d) for the administrative law judge hearing process[.]" 20 C.F.R. § 404.916(b)(1). In turn, section 404.950(d)(1) provides: "When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other
*(continued on next page)*

Goodman Notes, which he submitted to the Appeals Council by letter dated September 15, 2006. *See* Exhs. A-B to Motion To Supplement. As one might expect, the adverse decision rested in large part on the absence of contemporaneous medical evidence corroborating either the plaintiff's claim that he experienced symptoms of a disabling level of severity prior to his date last insured or Dr. Goodman's 2006 opinion to that effect. *See* Record at 15-16.

Despite the administrative law judge's commendable efforts to develop the record in this case, he did not purport to – and did not – follow the dictates of SSR 83-20, which imposes what fairly could be described as heightened record-development duties. Specifically, he did not (i) attempt to secure additional medical evidence that he himself stated at hearing should exist – Dr. Goodman's contemporaneous progress notes – by issuing a subpoena, despite having been requested to do so, (ii) explore other sources of documentation (such as family members, friends or former employers) about the plaintiff's status prior to his date last insured, or (iii) call upon the services of a medical advisor to assist him in inferring the onset date of disability. *See* SSR 83-20 at 51-52. While SSR 83-20 does not mandate that a medical advisor be called, or additional evidence be sought, in every instance, courts have construed one or both of those steps to be essential when (as here) the record is ambiguous regarding onset date.[8] *See, e.g., Katt v. Astrue*, No. 05-55043, 2007 WL 815418, at *1 (9th Cir. Mar. 14, 2007) ("[A]n ALJ must call a medical expert if there is ambiguity in the record regarding the onset date of a claimant's disability. If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the

---

documents that are material to an issue at the hearing." 20 C.F.R. § 404.950(d)(1).

[8] The administrative law judge himself acknowledged the ambiguity of the evidence with respect to date of onset of disability, stating, for example: "[Dr. Goodman's] got a letter in, you know, his September 2005 letter says over the last couple of years [the plaintiff's] mood has become much more depressed. Well, a couple of years doesn't sound like 2000. Maybe that's what he meant, but it's not clear, and this latest statement is inconsistent with that. And so, you know, if he's an elderly man and maybe he has a failing memory, maybe his earlier letters are more reliable than his recent letters, I don't know. That's why we need the underlying treatment records to show what was going on to corroborate the severity, the duration, the continuity, the lack of improvement and what have you. You
*(continued on next page)*

services of a medical advisor and to obtain all evidence which is available to make the determination.") (citation and internal quotation marks omitted); *Blea v. Barnhart*, 466 F.3d 903, 910 (10th Cir. 2006) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous.") (citation and internal quotation marks omitted); *Briscoe*, 425 F.3d at 353 ("The ALJ acknowledged that the medical evidence was inconclusive. Rather than explore other sources of evidence, as SSR 83-20 requires, the ALJ drew a negative inference at that point."); *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997) ("It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [claimant] was not disabled before September 30, 1982. Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis.") (citations and internal quotation marks omitted). Reversal and remand accordingly are warranted in this case.

While the plaintiff may or may not, upon remand, be found to have become disabled prior to his date last insured – a matter on which I express no opinion – in the circumstances of this case he is entitled to a proper determination of the date of onset of his disability in accordance with the dictates of SSR 83-20.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and **REMANDED** for proceedings consistent herewith.

---

know, the conclusory letters really are not enough. We need documentation." Record at 449.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of July, 2007.

/s/ David M. Cohen  
David M. Cohen  
United States Magistrate Judge